**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JESSICA SEGOVIA, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>BURLINGTON COAT FACTORY WAREHOUSE CORPORATION,<br><br>        Defendant. | Case No. 1:24-cv-06730-CPO-MJS<br><br>**CIVIL ACTION** |

**DEFENDANT BURLINGTON COAT FACTORY WAREHOUSE CORPORATION'S BRIEF IN SUPPORT OF MOTION TO DISMISS CLASS ACTION**

Stephen C. Matthews
DLA Piper LLP (US)
51 John F. Kennedy Parkway, Ste. 120
Short Hills, New Jersey 07078
stephen.matthews@us.dlapiper.com

*Attorneys for Defendant*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 5

SUMMARY OF ALLEGATIONS ............................................................................................... 7

STANDARD OF REVIEW ......................................................................................................... 8

LEGISLATIVE HISTORY .......................................................................................................... 9

LEGAL ARGUMENT ................................................................................................................ 11

    I.    Plaintiff Fails to Allege a TUCSRA Violation. ......................................................... 11

    A.  Burlington Is Not a "Communication Service" Provider. ....................................... 11

    B.  Plaintiff Fails to Plausibly Allege Burlington Collected "Communication Service Records".................................................................................................................... 16

    C.  Plaintiff Fails to Allege She Is a "Customer" of Any Communication Service Provider. 19

    II.   If TUCSRA Applies to Plaintiff's Claim, It Is Preempted by the CAN-SPAM Act. ........ 21

CONCLUSION ......................................................................................................................... 24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................7, 8

*Beyond Sys., Inc v. Kraft Foods, Inc.*,
    777 F.3d 712 (4th Cir. 2015) ..............................................................15

*Campos v. TJX Companies, Inc.*,
    No. 1:24-cv-11067 (D. Mass.) .............................................................5

*Encinas v. Office Depot, LLC*,
    No. 2:24-cv-1463-JTT (D. Ariz.) ........................................................5

*Gordon v. Virtumundo, Inc.*,
    575 F.3d 1040 (9th Cir. 2009) ............................................................15

*Hagar v. Fed. Bureau of Investigation*,
    2024 WL 1298321 (E.D. Tex. Mar. 7, 2024) ....................................13

*Hartley v. Urban Outfitters, Inc.*,
    No. 2:23-cv-4891 (E.D. Pa.) ................................................................5

*Hassen v. Gov't of Virgin Islands*,
    861 F.3d 108 (3rd Cir. 2017) ............................................................7, 8

*Knight v. Patagonia, Inc.*,
    No. 4:24-cv-255-RM (D. Ariz.) ..........................................................5

*McGee v. Nordstrom Inc.*,
    No. 2:23-cv-1875 (W.D. Wash.) .........................................................5

*Mills v. Saks.com LLC*,
    No. 1:23-cv-10638 (S.D.N.Y.) ............................................................5

*Prudential v. Estate of Rojo-Pacheco*,
    962 P.2d 213 (Ariz. Ct. App. 1997) .................................................................. 12

*Qasimyar v. Maricopa Cnty.*,
    483 P3d 202 (Ariz. Ct. App. 2021) .................................................................... 12

*Smith v. Target Corp.*,
    No. 2:240cv01048-ROS (D. Ariz.) ....................................................................... 5

*State v. Medrano-Barraza*,
    949 P.2d 561 (Ariz. Ct. App. 1997) .................................................................. 14

*Torrez v. Signet Jewelers Ltd.*,
    No. 2:24-cv-1332-DMF (D. Ariz.) ........................................................................ 5

**Statutes**

A.R.S. § 13-3018(B) ................................................................................................ 12

A.R.S. § 44-1376(1) ........................................................................................... 11, 12

A.R.S. § 44-1376.01 ................................................................................................. 5

A.R.S. § 44-1376.01(A)(1) ...................................................................................... 8

A.R.S. § 44-1376.01(A)(1)-(3) ............................................................................... 8

A.R.S. § 44-1376.04 ............................................................................................ 5, 8

A.R.S. § 44-1376.04(A) .......................................................................................... 8

15 U.S.C. § 7701(b)(1) .......................................................................................... 14

15 U.S.C. § 7707(b)(1) .......................................................................................... 14

2006 Ariz. Legis. Serv. Ch. 260 ............................................................................. 9

CAN–SPAM Act .............................................................................................. 14, 15

ECA ......................................................................................................................... 12

Federal Rule of Civil Procedure 12(b)(6) .......................................................... 5, 7

TUCSRA .......................................................................................................... *passim*

Defendant Burlington Coat Factory Warehouse Corporation ("Burlington") moves to dismiss Plaintiff's Class Action Complaint (Dkt. 1, "Compl.") pursuant Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## PRELIMINARY STATEMENT

This case is one of nearly a dozen cases brought by Plaintiff's counsel against retailers around the country alleging that their marketing emails violate Arizona's Telephone, Utility and Communication Service Records Act, A.R.S. § 44-1376 ("TUCSRA").[1] The TUCSRA is a 2006 statute that prohibits "pretexting," which occurs when data brokers call a telephone company pretending to be the account holder to obtain and sell the account holder's telephone records without consent. A.R.S. § 44-1376.01. As in the other cases, Plaintiff relies on a wholly unsupported interpretation of TUCSRA to argue that this statue extends to the use of routine marketing emails. It does not.

Plaintiff alleges that she subscribed to Burlington's marketing emails, which contained so-called "spy pixels" that allowed Burlington to obtain information

---

[1] Other TUCSRA cases recently filed by Plaintiff's counsel include: *Encinas v. Office Depot, LLC*, No. 2:24-cv-1463-JTT (D. Ariz.); *McGee v. Nordstrom Inc.*, No. 2:23-cv-1875 (W.D. Wash.); *Knight v. Patagonia, Inc.*, No. 4:24-cv-255-RM (D. Ariz.); *Mills v. Saks.com LLC*, No. 1:23-cv-10638 (S.D.N.Y.); *Hartley v. Urban Outfitters, Inc.*, No. 2:23-cv-4891 (E.D. Pa.); *Torrez v. Signet Jewelers Ltd.*, No. 2:24-cv-1332-DMF (D. Ariz.); *Smith v. Target Corp.*, No. 2:240cv01048-ROS (D. Ariz.); *Campos v. TJX Companies, Inc.*, No. 1:24-cv-11067 (D. Mass.); *Spector v. Williams-Sonoma, Inc.*, No. CGC-24-617422 (San Francisco Cnty. Sup. Ct.).

related to Plaintiff's interaction with those emails. Compl. ¶¶ 3-4. Specifically, Plaintiff alleges that these pixels gathered information regarding her email address and server, the subject of Burlington's marketing emails, when and where Plaintiff opened the emails, and whether Plaintiff forwarded or printed the emails. *Id.* Based on this alleged conduct, Plaintiff brings a single cause of action under TUCSRA, alleging these "spy pixels" extract "communication service records" in violation of the statute. *Id.* ¶¶ 54-56. Plaintiff's proposed interpretation is unsupported by any authority and belied by the statute's text and history. Accordingly, the Complaint fails to state a claim for relief, and must be dismissed, for the following reasons.

First, TUCSRA neither addresses nor prohibits routine commercial email practices. Instead, as the plain text and legislative history demonstrate, TUCSRA applies to an entirely different subject—i.e., prohibiting companies from engaging in "pretexting" by knowingly procuring or attempting to procure public utility, telephone, or communication service records of Arizona residents without their consent or through fraud. A.R.S. § 44-1376.01. As a result, no court has applied TUCSRA in the novel way Plaintiff and her counsel now urge.

Second, TUCSRA's statutory text prohibits only the unauthorized procurement of (1) "communication service records" (2) of a "customer" (3) maintained by a "communication service" provider. Plaintiff does not plausibly allege any of these predicate elements: Burlington is not a communication service

provider, Plaintiff is not a customer of a communication service provider, and Burlington did not procure any communication service records from any service provider. Moreover, if Plaintiff's expansive interpretation of TUCSRA were adopted, it would produce absurd outcomes, such as creating liability for forwarding emails without the consent of the original email's sender. This is not conduct the statute prohibits.

Third, if the Court were to adopt Plaintiff's interpretation of TUCSRA, and conclude it regulates routine marketing emails, Plaintiff's claim still fails. According to Plaintiff's interpretation, TUCSRA is a state statute that regulates the transmission of commercial emails, and is thus expressly preempted under the federal Controlling the Assault of Non-Solicited Pornography and Marketing ("CAN-SPAM") Act. Accordingly, the Complaint must be dismissed.

## SUMMARY OF ALLEGATIONS

Plaintiff, an Arizona resident, alleges she is a "subscriber" to Burlington's promotional or marketing email list. Compl. ¶ 3. She further alleges that she has received and voluntarily opened promotional emails from Burlington since August 2020. *Id.* at ¶¶ 7, 8. Plaintiff claims that each time she opened an email from Burlington, the "spy tracking pixels" within such emails allegedly "procured her sensitive email information including the time and place she opened and read the messages, how long she read the email, her location, her email client type, her IP

address, her device information and whether and to whom the email was forwarded to." *Id.* at ¶¶ 9, 35, 42. Plaintiff alleges Burlington "never received consent from Plaintiff to procure her private email records." *Id.* at ¶¶ 10, 43. On the basis of these allegations, Plaintiff brings a single cause of action for violation of TUCSRA.

## STANDARD OF REVIEW

Under Rule 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations and citation omitted); *see also Hassen v. Gov't of Virgin Islands*, 861 F.3d 108, 115 (3d Cir. 2017) ("In evaluating plausibility, 'we disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements.'") (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Hassen*, 861 F.3d at 115 ("A claim 'has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'") (citation omitted).

## LEGISLATIVE HISTORY

The Arizona Legislature enacted TUCSRA in 2006 to combat a specific crime: "pretexting"—the practice of data brokers calling telephone companies and pretending to be an account holder to obtain that account holder's records and sell them on the internet. *See* AZ H.R. B. Summ., 2006 Reg. Sess. H.B. 2785 (4/24/06) (noting "there are over 40 'data broker' companies that … have fraudulently gained access to telephone records by posing as the customer, then offering the records for sale on the Internet without the customer's consent or knowledge, a practice known as 'pretexting.'"). TUCSRA was enacted to "[p]rohibit[] the unauthorized sale of *telephone records*" and to direct "*telecommunications carriers* to establish reasonable procedures to protect the consumer against such unauthorized disclosure." AZ H.R. B. Summ., 2006 Reg. Sess. H.B. 2785, 2/16/2006 (emphasis added).

As originally enacted in 2006, TUCSRA only regulated telephone records and telecommunications carriers, and provided that a person shall not "[k]nowingly procure, attempt to procure, solicit or conspire with another," "[k]nowingly sell or attempt to sell," or "receive a *telephone record* of any resident of this state" without authorization or through fraud. 2006 Ariz. Legis. Serv. Ch. 260 (H.B. 2785) at § 44-1376.01(A) (emphasis added). The 2006 Arizona Act also required *telephone companies* to "establish reasonable procedures to protect against unauthorized or

fraudulent disclosure of such records that could result in a substantial harm or inconvenience to any customer." *Id.* at § 44-1376.01(B).

One year later, the Arizona Legislature amended TUCSRA while specifically confirming that TUCSRA's purpose is to address pretexting. *See id.* at 4/30/2007, 3/2/2007 (discussing pretexting and limiting amendment to "expand[ing] the existing crime of falsely procuring, selling or receiving *telephone records* to include *communication service records* and *public utility records*.") (emphasis in original); AZ S.F. Sheet, 2007 Reg. Sess. H.B. 2726 at 3/12/2007 and 4/20/2007 (referring to pretexting and federal laws prohibiting telecommunications carriers from using, disclosing, and permitting access to customer information). Thus, the Arizona Legislature expanded TUCSRA's prohibition on pretexting to include "public utility" records and "communication service records," but did not change the purpose of the statute: prohibiting pretexting to obtain those records. *Id.*; 2007 Ariz. H.B. 2726 (May 14, 2007) (enacting amendment). TUCSRA has not been amended since 2007.[2]

---

[2] Plaintiff alleges that a scandal at Hewlett-Packard involving pretexting *and* "spyware" motivated the Legislature to amend TUCSRA. Compl. ¶¶ 26-28. But Plaintiff does not—and cannot—cite to any legislative history suggesting that TUCSRA was passed to address "spyware." *See generally* Compl.

# LEGAL ARGUMENT

## I.  Plaintiff Fails to Allege a TUCSRA Violation.

Plaintiff fails to plausibly state a claim for relief under the plain text of the TUCSRA. *First*, "communication service records" must come from a "communication service" provider—which Burlington is not. *Second*, Plaintiff does not plausibly allege that Burlington procured any "communication service records," and any interpretation of TUCSRA to the contrary would produce absurd results. *Third*, Plaintiff has not alleged that she is a "customer" of Burlington or any "communication service" provider.

### A.  Burlington Is Not a "Communication Service" Provider.

The TUCSRA contains a list of "communication service records," but those are not broadly defined categories to be applied to any conceivable piece of data an entity may collect; rather they are specific types of records created and maintained by a "communication service provider." Burlington is not a communication service provider, nor does Plaintiff allege that Burlington procured any records created or held by any communication service provider, and Plaintiff therefore fails to state a claim under TUCSRA.

TUCSRA defines "communication service record" as:

> subscriber information, including name, billing or installation address, length of service, payment method, telephone number, electronic account identification and associated screen names, toll bills or access logs, records

> of the path of an electronic communication between the
> point of origin and the point of delivery and the nature of
> the communication service provided, such as caller
> identification, automatic number identification, voice
> mail, electronic mail, paging or other service features.
> Communication service records do not include the content
> of any stored oral, wire or electronic communication or a
> telephone record.

A.R.S. § 44-1376(1).

This definition covers information that is only to be kept by a communication service provider—such as a wireless data carrier. For example, references to "toll bills," "installation address," "method of payment," "length of service," and "other service features," are categories of information that only make sense in the context of records kept by a service provider. Indeed, the definition's reference to "the nature of the ***communication service provided***" makes explicit that these are records kept by the "provider" of the service. *See City of Surprise v. Arizona Corp. Comm'n*, 246 Ariz. 206, 211, 437 P.3d 865, 870 (2019) ("*Noscitur a sociis*—a word's meaning cannot be determined in isolation, but must be drawn from the context in which it is used—is appropriate when several terms are associated in a context suggesting the terms have some quality in common.").

Nothing in the plain text of the definition of a "communication service record" suggests it applies to anyone other than communication services providers such as internet and phone companies. Indeed, despite the statute providing an extensive list of what *is* included in the definition of a "communication service record," the

statute's list contains no references to email pixels or the information Plaintiff alleges they gather (email addresses, email servers, email subject lines, when and where emails are opened, or whether emails are forwarded or printed). *Compare* A.R.S. § 44-1376(1) *with Compl.* ¶ 35. Those terms cannot be read into the statute. *See City of Surprise*, 246 Ariz. at 211 (noting that "the expression of one item implies the exclusion of others").

This reading of "communication service record" also comports with related Arizona statutes. *See Collins v. Stockwell*, 137 Ariz. 416, 419, 671 P.2d 394, 397 (1983) ("the meaning and application of a specific statute or portion of a statute is determined by looking to statutes which relate to the same person or thing and which have a purpose similar to that of the statute being construed"). Before enacting TUCSRA, the Legislature amended Arizona's Eavesdropping and Communications Act ("ECA") in 2000 to permit prosecutors to subpoena "a communication service provider in order to obtain communication service records." A.R.S. § 13-3018(B). A "communication service provider" under the ECA is anyone "who is engaged in providing a service that allows its users to send or receive oral, wire or electronic communications or computer services." *Id.* § 13-3001(3). Critically, the ECA defined "communication service record" with the same verbiage TUCSRA would later use. *Compare id.* § 13-3018(G) *with* A.R.S. § 44-1376(1). Thus under the ECA, a "communication service record" is limited to records possessed by communication

services providers.

The same parameters govern TUCSRA. Had the Arizona Legislature intended to give "communication service records" a broader or different definition under TUCSRA, it could have done so. But the Legislature's choice to use the same definition across different statutes confirms that, as with the ECA, TUCSRA is limited to records maintained by communication services providers.

As the Arizona Supreme Court has made clear, such "[s]tatutes *in pari materia* must be read together and all parts of the law on the same subject must be given effect, if possible." *Collins*, 137 Ariz. At 419; *see also Prudential v. Estate of Rojo-Pacheco,* 962 P.2d 213, 223 (Ariz. Ct. App. 1997) (Arizona courts "presume that when the legislature enacts a statute, it is aware of existing statutes") (citations omitted); *Qasimyar v. Maricopa Cnty.*, 483 P3d 202, 209 (Ariz. Ct. App. 2021) ("The presumption of consistent usage applies also when different sections of an act or code are at issue. ... [T]he more the connection the cited statute has with the statute under consideration, the more plausible the argument becomes.") (quoting Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 172-73 (2012)).

Moreover, "communication service" must modify "records" in a way that limits the definition by the entity that holds the records. Section 44-1376(4) defines a "public utility record" to include much of the same information as a "communication service record": "name, billing or installation address, length of

service," and "payment method." *Id.* Thus, a "public utility record" is a record held by a public utility. A "communication service record" must thus be a record held by a communication service. Otherwise, the "public utility" and "communication service" language in each definition would be superfluous, an outcome that principles of statutory interpretation do not allow. *Plaza v. Chase Home Finances LLC,* 2011 WL 13233550, at *4 (D. Ariz. July 27, 2011) (quoting *Mejak v. Granville,* 136 P.3d 874, 876 (Ariz. 2006)) (when this Court interprets Arizona statutes, it strives to "give effect . . . to each word as appropriate" and ensure "that no provision is rendered meaningless, insignificant, or void.").

In sum, the legislative history, plain language, and statutory construction of TUCSRA all demonstrate that a "communication service record" must come from a "communication service" provider. But Plaintiff does not allege that Burlington is a communication service provider, which it is not. Nor does she allege that Burlington procured any records created and held by any of her communication service providers. Rather, the Complaint alleges that Burlington created its own records about Plaintiff's receipt of marketing emails from Burlington—emails that Plaintiff requested Burlington to send. *See, e.g.,* Compl. ¶ 4 (alleging that Burlington procures various information about an "email" from Burlington), *id.* ¶ 9 (same). This is far afield from the pretexting conduct of data brokers that the statute was enacted to prevent. The Court should decline Plaintiff's invitation to rewrite the statute to reach

*any* business that communicates with a customer—including retailers like Burlington, rather than a "communication service record" maintained by a communication service provider.

Such an interpretation would also produce absurd results. For example, under Plaintiff's reading of TUCSRA, anyone attaching native email files to an email—or even forwarding emails—without "authorization" of the original sender would be liable under TUCSRA. Indeed, an email's metadata contains a host of information that Plaintiff claims constitutes a "communication service record," such as the email's path, timestamp, subject line, email client type, and whether and to whom the email was forwarded. *See*, *e.g.*, *Hagar v. Fed. Bureau of Investigation*, 2024 WL 1298321, at *6 (E.D. Tex. Mar. 7, 2024) (adopting FBI's explanation that an email's metadata "essentially provides a map of the path the email followed as it travelled through various mail servers, including times, sender, receiver, devices, and more. This metadata is automatically electronically generated when the email is created and sent."). Under Arizona law, courts "presume the framers of the statute did not intend an absurd result and [judicial] construction must avoid such a consequence." *State v. Medrano-Barraza*, 949 P.2d 561, 563 (Ariz. Ct. App. 1997).

### B.    Plaintiff Fails to Plausibly Allege Burlington Collected "Communication Service Records"

Plaintiff makes the conclusory allegation that Burlington "procured" her "communication service records." *E.g.,* Compl. ¶ 55 ("Defendant 'procures'

Plaintiff's and Class members' 'communication service records' because they 'obtain by any means, including electronically' Plaintiff and Class members' 'communication service records' as defined in A.R.S. § 44-1376). She does nothing to describe how each piece of data Burlington allegedly collected falls within the statutory definition. The Complaint does not allege that Burlington collected anything resembling Plaintiff's "name," "billing or installation address," "length of service," "payment method," "telephone number," or "toll bills." A.R.S. § 44-1376(1). That leaves only three potentially applicable statutory categories: "records of the path of an electronic communication between the point of origin and the point of delivery," "the nature of the communication service provided," and "access logs." Plaintiff does not plausibly allege that Burlington collected any information that falls into any of these categories.

**First**, Plaintiff appears to suggest that Burlington's alleged collection of Plaintiff's "IP address" is a "records of the path of an electronic communication between the point of origin and the point of delivery." This argument fails because an IP address is not a "record" of a "path of an electronic communication," but is instead "a numerical identifier for each computer or network connected to the Internet." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 596 n.2 (9th Cir. 2020). And, if the Arizona Legislature had intended the "communication service

records" to include IP addresses, it would have said so.[3]

**Second**, none of the information that Burlington allegedly collected plausibly constitutes information about "the nature of the communication service provided." The statutory language provides examples in this category, including "caller identification," "automatic number identification," "voice mail," "electronic mail, paging," or "other services features." A.R.S. § 44-1376(1). "[W]here general words follow the enumeration of particular classes of persons or things, the general words should be construed as applicable only to persons or things of the same general nature or class of those enumerated." *Wilderness World, Inc. v. Dep't of Revenue,* 895 P.2d 108, 111 (Ariz. 1995) (internal quotation marks and citation omitted). The examples demonstrate that "the nature of the communication service provided" means types of services that a customer might obtain from their telecommunications service provider. Plaintiff pleads nothing in this category other than to allege that the information gathered by the "spy pixel" includes "email client type." But an email client type is nothing more than the identity of the email service provider, which is identified in the email address itself, such as Gmail.com. This information would

---

[3] Moreover, "Courts uniformly hold that individuals have no reasonable expectation of privacy in their IP address." *United States v. Murray*, 2021 WL 4237124, at *1 (E.D. Wash. Sept. 16, 2021). *See also Heeger v. Facebook, Inc.,* 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) ("[T]here is no legally protected privacy interest in IP addresses.").

necessarily have been provided *by Plaintiff*—and therefore authorized—when she signed up as a subscriber to Burlington's marketing emails. *See* Compl. ¶ 3.

**Third**, though she pleads with no such specificity, Plaintiff may contend that Burlington's alleged collection of "the time and place she opened and read the messages" and "how long she read the email" constitute "access logs." But this argument also fails. The statute's definition of "communication service record" is not concerned with the way a user interacts with a given communication, but her interactions with the "communication service" as a whole. A.R.S. § 44-1376(1). When the Legislature wanted to protect information about specific communications, it knew how to do so: by referring explicitly to a given "electronic communication." *Id.* ("records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communication service provided"). Because such language is lacking, the better and more plausible reading of "access logs" is logs of when a consumer used a communications *service,* not their interactions with specific communications. *See City of Surprise*, 246 Ariz. at 211 ("[T]he expression of one item implies the exclusion of others.").

C. **Plaintiff Fails to Allege She Is a "Customer" of Any Communication Service Provider.**

Plaintiff's Complaint does not allege that she is or was a "customer" of any communication service provider. This is fatal to Plaintiff's claim, because TUCSRA creates a private right of action only for "a ***customer*** whose communication service

records, telephone records or public utility records were procured, sold or received in violation of this article[.]" A.R.S. § 44-1376.04(A) (emphasis added). The statute also makes clear that a violation occurs only where a "public utility record, a telephone record or communication service record of any resident of this state without the authorization of the ***customer*** to whom the record pertains." A.R.S. § 44-1376.01(A)(1)-(3) (emphasis added). In particular, "of the customer" in this context can only mean the customer of the public utility, telephone, or communication service provider who maintains such records.

The Arizona Legislature's use the term "customer" must be given effect and its ordinary meaning. "When interpreting a statute, we presume the legislature intended each word and clause to have meaning." *In re Manny*, 211 Ariz. 301, 304, 120 P.3d 1111, 1114 (Ct. App. 2005). *See also Deatherage v. Deatherage*, 140 Ariz. 317, 320, 681 P.2d 469, 472 (Ct. App. 1984) ("The legislature is presumed to express its meaning as clearly as possible and therefore words used in a statute are to be accorded their obvious and natural meaning.").

Although TUCSRA does not define "customer," other statutes defining the term, as well the dictionary definition, demonstrate that a person must purchase a product or service from a business to be a "customer" of that business. *E.g.,* A.R.S. § 20-1693 (defining "customer" as "a person who purchases portable electronics or services"); *Customer,* Merriam-Webster.com Dictionary, https://www.merriam-

webster.com/dictionary/customer (last visited Aug. 21, 2024) (defining "customer" as "one that purchases a commodity or service."). *See also Yollin v. City of Glendale*, 191 P.3d 1040, 1044 (Ariz. App. 2008) (observing "Arizona courts "often consult respected dictionaries for the plain meaning of an undefined term in a statute.").

At most, Plaintiff alleges she is a "subscriber[] to Defendant's email list." Compl. ¶ 3. But absent are any allegations that Plaintiff ever purchased anything from Burlington—let alone that Burlington is a communication service provider— or that Plaintiff is a customer of some other communication service provider whose records were obtained by Burlington. The Complaint therefore fails to establish the threshold fact that Plaintiff is a "customer."

## II.   If TUCSRA Applies to Plaintiff's Claim, It Is Preempted by the CAN-SPAM Act.

But even if Plaintiff's expansive reading of TUCSRA were correct, and the statute does expressly regulate the practices surrounding commercial marketing emails, then TUCSRA would be preempted under the CAN-SPAM Act.

The CAN-SPAM Act was enacted to regulate "commercial electronic mail on a nationwide basis." 15 U.S.C. § 7701(b)(1). It also expressly "supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages … ." 15 U.S.C. § 7707(b)(1). Thus, if Plaintiff's theory that TUCSRA expressly applies to routine marketing emails were valid, then her claim would be preempted.

The lone exceptions to this express preemption are with respect to any state regulation that "prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto," *id.*, or "state laws that are not specific to electronic mail … ." *Id.* at § 7707(b)(2); *see also Beyond Sys., Inc v. Kraft Foods, Inc.*, 777 F.3d 712, 717 (4th Cir. 2015) ("Congress specifically provided that the statute would preempt state laws, except for those that fit within a carve-out or 'savings' provision."); *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1061 (9th Cir. 2009) ("Thus, the express language of § 7707(b) demonstrates Congress's intent that the CAN–SPAM Act broadly preempt state regulation of commercial e-mail with limited, narrow exception.").

Neither of the exceptions apply here. First, the exception for a statute prohibiting the "falsity or deception in any portion of a commercial electronic mail message" does not apply. Although TUCSRA prohibits procuring communication service records by "fraudulent, deceptive or false means," it also prohibits procuring such records "without the authorization of the customer to whom the record pertains." A.R.S. § 44-1376.01(A)(1). Here, Plaintiff does not allege that Burlington procured her communication service records through "fraudulent, deceptive or false means," and instead alleges only that Burlington procured such records without her "authorization." Compl. ¶ 6. *See Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1063 (9th Cir. 2009) ("The CAN–SPAM Act established a national standard, but left the

individual states free to extend traditional tort theories such as claims arising from fraud or deception to commercial e-mail communication. To find otherwise would create an exception to preemption that swallows the rule and undermines the regulatory balance that Congress established, and which would once again subject legitimate businesses to inconsistent and possibly incompatible state regulations.") (internal quotation marks and citation omitted).

Second, according to Plaintiff, "the Arizona legislature went a step further" when it amended TUCSRA in 2007, specifically to "prohibit[] procurement of any 'communication service record' (including email records)[.]" Compl. ¶ 28. *See also id.* ¶ 29 ("Despite Arizona law prohibiting the practice, companies still embed trackers within emails without first obtaining consumers' consent."); *id.* ¶ 59 ("Each time Defendant sent an email containing a spy pixel, Defendant procured a communication service record, thus committing a separate violation of A.R.S. § 44-1376.01."). If so, and Plaintiff's expansive reading of TUCSRA is adopted, such that TUCSRA expressly and specifically regulates whether commercial emails may be sent containing "spy pixels," as well as the information that such pixels may collect or transmit, then TUCSRA falls squarely within the CAN-SPAM Act's preemption clause. Plaintiff's claim therefore fails even under her reading of TUCSRA, and must be dismissed for this reason as well.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the Complaint.


Dated: August 30, 2024                    Respectfully submitted,

                                          */s/ Stephen C. Matthews*
                                          Stephen C. Matthews
                                          **DLA Piper LLP (US)**
                                          51 John F. Kennedy Parkway, Ste. 120
                                          Short Hills, New Jersey 07078
                                          Tel: 973.520.2541
                                          stephen.matthews@us.dlapiper.com

                                          Isabelle L. Ord (*pro hac vice forthcoming*)
                                          **DLA Piper LLP (US)**
                                          555 Mission Street, Suite 2400
                                          San Francisco, California 94105
                                          Tel: (415) 836-2500
                                          isabelle.ord@us.dlapiper.com

                                          Austin Rainwater (*pro hac vice pending)*
                                          Jeff DeGroot (*pro hac vice pending)*
                                          Virginia Weeks (*pro hac vice forthcoming*)
                                          **DLA Piper LLP (US)**
                                          701 Fifth Street, Suite 6900,
                                          Seattle, Washington 98104-7029
                                          Tel: 206-839-4800
                                          austin.rainwater@us.dlapiper.com
                                          jeffrey.degroot@us.dlapiper.com
                                          virginia.weeks@us.dlapiper.com

                                          *Attorneys for Defendant*
                                          *Burlington Coat Factory Warehouse*
                                          *Corporation*