# BURSOR & FISHER
P.A.

**1330 AVENUE OF THE AMERICAS**
**NEW YORK, NY 10019**
www.bursor.com

**YITZCHAK KOPEL**
Tel: **646.837.7150**
Fax: **212.989.9163**
ykopel@bursor.com

September 11, 2024

<u>Via ECF</u>

Hon. Christine P. O'Hearn
U.S. District Judge
District of New Jersey
4th & Cooper Streets, Room 6050
Camden, NJ 08101

**Re:** *Segovia v. Burlington Coat Factory Warehouse Corp.*, No. 1:24-cv-06730-CPO-MJS

Dear Judge O'Hearn:

  I represent Plaintiff in the above matter. I write pursuant to Rule II of Your Honor's Judicial Preferences in response to Defendant Burlington Coat Factory Warehouse Corporation's ("Defendant" or "Burlington") September 4, 2024 letter regarding its anticipated motion to dismiss (the "Letter"). Plaintiff will oppose Defendant's motion for the reasons stated below.

## I.  Defendant's Spy Pixels Are Communication Service Records

  Defendant argues Plaintiff "fails to plausibly allege that the data Burlington purportedly collected falls within th[e] statutory definition" of "communication service record" because Defendant did not collect Plaintiff's "name, billing or installation address, length of service, payment method, telephone number, or toll bills." Letter at 2 (internal quotations omitted). But Defendant completely disregards the statutory definition of "communication service record," which includes "access log" and "records of the path of an electronic communication between the point of origin and the point of delivery" for "electronic mail." A.R.S. § 44-1376(1) (the "Act"). This definition fits the records procured by Defendant's spy pixels, which recorded Plaintiff's "email address, the subject of the email, when the email is opened and read, the recipient's location, how long the recipient spends reading an email, whether it is forwarded, whether it is printed, and what kind of email server the recipient uses." Compl. ¶ 35.

  The fact that Defendant's spy pixels match the statutory definition of "communication service record" is unsurprising, given that the impetus for the statute was Hewlett Packard's use of the same exact technology that Defendant used. A key part of the HP spying scandal included the use of "ReadNotify, a tracker that, once embedded into an email, allowed them to track the path the message takes, ***including whether the recipient opens the message***." Compl. ¶ 23 (cleaned up) (emphasis added). The use of ReadNotify is "a technique also employed by some e-mail marketers." *Id.* The technology used in the HP scandal is identical to the technology alleged in the complaint.

**II.     There Is No Requirement For Defendant to Be A Communication Service Provider**

Defendant argues that the Act does not apply because "Burlington is not a communication service provider, and Plaintiff does not and cannot allege that Burlington procured any records created or held by any communication service provider." Letter at 2. This argument is wrong for multiple reasons.

First and foremost, the Act never once mentions the word "communication service provider" and certainly contains no requirement that it solely applies to communication service providers. Defendant cites to no authority or language in the statute to suggest that the Act only applies to communication service providers.

Second, Defendant's interpretation makes no sense. How could a law criminalize a communication service provider from "procur[ing]" the "communication service record" that the provider itself generated? The law is plainly geared towards preventing *others* from accessing this information. Defendant's interpretation is illogical and would render the entire Act meaningless.

Third, as explained above in Section One, the information surreptitiously collected by Defendant, including "email address, the subject of the email, when the email is opened and read, the recipient's location, how long the recipient spends reading an email, whether it is forwarded, whether it is printed, and what kind of email server the recipient uses," Compl. ¶ 35, is precisely the sort of information typically accessible only by the provider of the communication service, so it is easy to understand why Defendant was not permitted to access this information without Plaintiff's consent.

Defendant argues that application of the law to entities that other than communication service providers would "produce absurd results" because "anyone forwarding an email without the 'authorization' of the original sender would be liable." Letter at 2. That is also wrong. An email is a communication, not a communication service record. The statute itself makes this clear: "[c]ommunication service records do not include the content of any stored oral, wired, or electronic communication or a telephone record." A.R.S. § 44-1376(1). That provision clearly exempts emails from the Act, which are obviously "electronic communications." Defendant's attempt to make its spying technology sound like merely forwarding an email is nonsensical. Millions of emails are sent every day without spy pixels attached.

**III.    Defendant's "Customer" Argument Makes No Sense**

Defendant argues that "Plaintiff fails to allege that she is or was a 'customer' of any communication service provider." Letter at 2. But Plaintiff clearly alleges that she uses an "email client." Compl. ¶ 9. That makes obvious that she is a customer of her email provider.

**IV.    Plaintiff's Claim Is Not Preempted**

Defendant argues that if the Court determines the Act "broadly regulates all marketing emails and applies to all businesses" then "Plaintiff's claim would be expressly preempted under

the federal Controlling the Assault of Non-Solicited Pornography and Marketing ('CAN-SPAM') Act." Letter at 3. This argument is too undeveloped to provide a detailed response.

First, the Act does *not* apply to marketing emails, it applies to communication service records, which include "access logs" and "records of the path of an electronic communication between the point of origin and the point of delivery" for "electronic mail." A.R.S. § 44-1376(1). As explained above, the contents of communications are exempted from the Act.

Moreover, Defendant fails to elaborate on this argument at all. It does not explain what type of preemption it is talking about, or why it believes preemption applies. This level of vagueness appears to be intentional, as Defendant's Letter was significantly under-length, so there was more than adequate room to explain its argument.

Plaintiff's *best guess* is that Defendant believes that field preemption applies. But that would be wrong. "Field preemption [only] occurs when federal law occupies a field of regulation so comprehensively that it has left no room for supplementary state legislation." *N.J. Thoroughbred Horsemen's Assoc. v. Nat'l Collegiate Athletic Assoc.*, 584 U.S. 453, 479 (2018). But CAN SPAM has nothing to do with communication service records. So it is unclear why Defendant believes this argument is supported.

Respectfully,

*[signature: Y. Kopel]*

Yitzchak Kopel

CC: All counsel of record via ECF